# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CENTERIA GEORGE,**

     **Plaintiff,**

**v.**                                                     **Case No.:  0:17-cv-60217-BB**

**HUMANA HEALTH INSURANCE COMPANY
OF FLORIDA, INC.,**

     **Defendant.**

_____/

### JOINT MOTION WITH INCORPORATED MEMORANDUM OF LAW FOR AN ORDER (1) PRELIMINARILY APPROVING THE PARTIES' SETTLEMENT AGREEMENT; (2) PRELIMINARILY CERTIFYING A CLASS FOR SETTLEMENT PURPOSES; (3) APPROVING THE FORM AND MANNER OF NOTICE TO THE CLASS; (4) SCHEDULING A FAIRNESS HEARING FOR THE FINAL CONSIDERATION AND APPROVAL OF THE PARTIES' SETTLEMENT; AND <u>(5) FINALLY APPROVING THE SETTLEMENT</u>

Plaintiff Centeria George ("Named Plaintiff") and Defendant Humana Health Insurance Company of Florida, Inc. ("Defendant"), all collectively referred to herein as the "Parties," by and through their respective counsel of record, submit this Joint Motion ("Joint Motion"), with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the Settlement Agreement between Named Plaintiff and the putative class of similarly situated applicants and, current and former employees / applicants she seeks to represent; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (5) approving the settlement in a subsequent Order.  In support of their Joint Motion, the Parties respectfully submit the following:

## I.        **JURISDICTION**

This Court has federal question jurisdiction over Named Plaintiff's claims, which arise under the Fair Credit Reporting Act ("FCRA"), pursuant to 28 U.S.C. § 1331.

Venue is proper in the United States District Court, Southern District of Florida, pursuant to 28 U.S.C. § 1391.  Defendant is headquartered here and regularly conducts business in South Florida, and subject to personal jurisdiction in this district.

## II.       **BACKGROUND**

On November 1, 2016, Named Plaintiff, Centeria George, filed a Class Action Complaint styled *Centeria George, et al. v. Primary Care Holding Inc., d/b/a Humana*, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (the "FCRA Litigation"), asserting claims against Defendant under the Fair Credit Reporting Act ("FCRA") on behalf of herself and on behalf of a proposed class of similarly situated individuals.  On January 30, 2017, Defendant timely removed the case to this Honorable Court and it was assigned S.D. Fla. Case

2

No.: Case 0:17-cv-60217-BB.  The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and each of the 464 putative class members.

Specifically, the settlement provides for settlement payments to be made to approximately 464 class members, each receiving approximately $69.39.  The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement.  In addition, Defendant has agreed to fund separately up to $5,000 for class administration, and the Named Plaintiff is entitled to apply to the Court for $8,000.   This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts.  If the requested amounts are granted for attorneys' fees -- Plaintiffs' will submit a separate unopposed motion seeking a lodestar amount of no more than $29,800 -- ten (10) days after the Court rules on this Motion for Preliminary approval administrative expenses, and a Class Representative service award, the Parties anticipate that each class member will receive a net payment of approximately $69.39.  If any money remains in the fund after these distributions and after Class Members have had 60 days to cash their settlement checks, left over funds revert to Defendant.  In sum, the proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

A.    **Plaintiff's Allegations from the Amended Complaint**

In July of 2015, Plaintiff applied to become a Customer Sales Representative for Defendant.  At that time, she was provided with FCRA disclosure documents that were allegedly violative of the FCRA because they were not in the "stand-alone form" as mandated by 15 U.S.C. § 1681b(b)(2)(A).  Plaintiff filed an Amended Complaint on March 6, 2016 in which, like in her original complaint, she alleged that Defendant routinely obtains and uses information in

consumer reports to conduct background checks on prospective employees and existing employees, and frequently relied on such information, in whole or in part, as a basis for adverse employment actions, such as termination, reduction of hours, change in position, failure to hire, and failure to promote.

Named Plaintiff further alleged that while the use of consumer report information for employment purposes is not *per se* unlawful, it is subject to disclosure and authorization requirements under the FCRA. Named Plaintiff's Complaint alleged that Defendant violated these requirements by procuring consumer reports on Named Plaintiff and other putative class members for employment purposes, without first making proper disclosures in the format required by the statute. Specifically, Named Plaintiff alleged that Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) and 15 U.S.C. § 1681b(b)(2)(A)(ii) by inserting extraneous information into forms purporting to grant Defendant authority to obtain and use consumer report information for employment purposes

Based on the foregoing alleged violations, Named Plaintiff asserted FCRA claims against Defendants on behalf of herself and two separate classes of Defendant's employees and prospective employees. In Counts One and Two of her Complaint, Named Plaintiff asserted a pair of FCRA claims under 15 U.S.C. §§ 1681b(b)(2)(A)(i) and (ii). Named Plaintiff's Complaint, and Rule 23 Motion, sought to have certified the following class:

> **Proposed Settlement Class:     All HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC. employees or prospective employees in the United States who were the subject of a consumer report procured by Defendant utilizing the forms attached as Exhibit A and/or B for the period from December 13, 2014 through April 30, 2017.**

Defendant has stopped using this form altogether and now uses what it believes to be a stand-alone form.

4

### B.   Defendant's Defenses

Defendant asserted numerous defenses to the FCRA Litigation.  For example, Defendant denied any liability, and specifically denied that inclusion of additional language in its disclosure form is a willful violation of the FCRA, and denied that statutory damages are appropriate in this case.  *See Syed v. M-I LLC*, 2014 U.S. Dist. LEXIS 150748 (E.D. Cal. Oct. 23, 2014) (dismissing complaint alleging inclusion of liability release was a willful violation of FCRA and noting that employer's interpretation of the FCRA was not objectively unreasonable as a matter of law) (reversed and remanded by Ninth Circuit in *Syed v. M-I, LLC*, 853 F.3d 492 (9th March 20, 2017)(*see also Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 696 (S.D. Ohio 2009) (holding that combined disclosure and liability waiver did not violate FCRA because the waiver was "not so great a distraction as to discount the effectiveness of the disclosure and authorization statements").

As part of the Settlement Agreement, Defendant specifically denies that it has engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, and denies that it has any liability whatsoever.  The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity.  However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

4697825v.1

### C.    Procedural Background

During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Class (464), Defendant's affirmative defenses, and the FCRA authorization form at issue.

To initiate the action, Named Plaintiff filed her Complaint and immediately began seeking class wide discovery, including both written and deposition requests.  Prior to the deadline for Defendant to respond to Named Plaintiff's Amended Complaint, or to its discovery, the Parties decided that a formal mediation might help avoid the costs associated with continued litigation.

### D.    Settlement Negotiations

The Parties attended an all-day mediation before highly respected Tampa mediator Mark Hanley on June 1, 2017.  As a result of this mediation, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit A, for which they now seek Court approval.  The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class members.

The Parties have confirmed that the Settlement Class constitutes all of the applicants and employees encompassed by the proposed Settlement Class definition.  Every Settlement Class member shall receive a settlement payment capped at $69.39, provided they do not "opt out" or otherwise object to the Settlement.  The settlement is "claims paid," meaning that Class members will not have to submit claim forms to receive a share of the settlement fund.  Rather, all Class members who do not opt out will simply receive checks after final approval. This is a fair and reasonable settlement amount in light of the continued risks inherent with litigation.

6

Statutory damages for a successful claim under the FCRA if the violation is willful are limited to a range of between $100 and $1,000.00.  Importantly, this settlement does not preclude any of the individual Settlement Class members from opting-out of the class and pursuing their own claims, should they be so inclined.  Nonetheless, it allows such Settlement Class members to recover a portion of the statutory damages authorized by 15 U.S.C. § 1681a(1)(A), and to also have their attorneys' fees and costs paid separately.  Plaintiff's counsel will submit an uncontested request to the Court asking for an $8,000 incentive award to the Named Plaintiff who remained extremely active throughout this entire litigation (even taking off work to attend mediation), and a separate fee petition to the Court seeking a lodestar amount of no more than $29,800 ten calendar days after the Court rules on this Motion for Preliminary approval.

## III.    THE PROPOSED SETTLEMENT

### A.    Benefits to the Settlement Class and Named Plaintiff

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay up to $32,200 to the Settlement Class.  With the Settlement Class comprised of 464 members, each Settlement Class member who does not opt-out of the settlement will receive a settlement payment of almost $70.  This a "claims paid" settlement.  Class members do not have to submit claim forms to receive a share of the settlement proceeds.  Rather, all Class members who do not opt out will simply receive checks after final approval.

The Named Plaintiff shall have, in addition to the claim provided her as a member of the Settlement Class, an additional claim in the sum of $8,000 as an Incentive Payment for the services provided to the Settlement Class in connection with the prosecution of this action, including

7

assistance in developing the facts necessary to file the Complaint and her participation in the mediation, discovery, and the facts provided for the two complaints.

**B.**    **Administration of Notice**

The Parties have agreed that Defendant will provide up to $5,000 to have notice administered which, in the undersigned's experience, is more than enough to send out notice to slightly less than 500 class members.  To the extent any additional funds are required, Plaintiff's counsel will pay the difference.

Within ten (10) days of the Court's preliminary approval of the Settlement Agreement, the Settlement Administrator shall mail the Notice Form, attached to the Settlement Agreement as Exhibit B, by U.S. mail to all Settlement Class members.  The Notice Form shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class members' eligibility to recover a portion of the settlement proceeds, and will include an explanation of the "claims paid" process as well as an explanation as to what happens if the settlement checks are not timely cashed.

The Notice shall inform Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so within 60 days; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Class members who choose to opt out or object to the settlement may do so within 60 days of the Notice mailing date. If the Court grants final approval of the settlement, Defendant will transfer the full amount of the settlement fund to the

Settlement Administrator within ten (10) calendar days of the Effective Date. Pursuant to the Class Action Fairness Act of 2005's ("CAFA") requirements, the final fairness hearing should be held 90 days following any court approval of this settlement.  Settlement checks will be mailed to all Class members within ten (10) calendar days of the Effective Date.  To the extent any money remains in the fund after these distributions and after Class members have had 60 days to cash their settlement checks, such monies shall revert to Defendant.

> **C.**     **Attorneys' Fees and Expenses**

The Parties have agreed that Class Counsel is entitled to $29,800 in fees and costs, subject to Court approval, to be paid by Defendant in addition to the settlement amount described above. Class Counsel will file a separate motion seeking approval for fees and costs.  Defendant does not oppose the amount of fees and costs sought by Class Counsel.

> **E.**     **Class Action Fairness Act Notice**

The Settlement Administrator will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by CAFA.  Within ten days of the filing of this Motion, the Settlement Administrator will serve upon the appropriate State official of each State in which a Settlement Class member resides and the United States Attorney General, a notice of the proposed settlement, in accordance with 28 U.S.C. § 1715.

## IV.    **PRELIMINARY CLASS CERTIFICATION**

As part of preliminary approval of the settlement, the Parties respectfully seek certification of the Settlement Class for the purposes of settlement, as described above.

> **A.**     **The Settlement Class Meets the Requirements of Rule 23(a)**

A court can certify a settlement class where the proposed class and proposed class representatives meet the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity,

commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b).  Here, pursuant to Rules 23(a) and 23(b)(3), Named Plaintiff seeks certification of a defined settlement class (the "Settlement Class") to consist of:

> **Proposed Settlement Class:   All HUMANA HEALTH INSURANCE COMPANY OF FLORIDA, INC  employees or prospective employees in the United States who were the subject of a consumer report procured by Defendant utilizing the forms attached as Exhibit A and/or B for the period from December 13, 2014 through April 30, 2017.**

The defined Settlement Class reflects Class Counsel's review of Defendant's records to determine potential claimants during the relevant period.  The Settlement Class includes every applicant and current or former employee of Defendant who was the subject of a consumer report using the applicable forms for the two year statute of limitations period.

Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a slightly different analysis where certification is contested than where, as here, a proposed settlement is under review.  "In its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Smith v. Ajax Magnethermic Corp.*, 2007 U.S. Dist. LEXIS 85551, at *14, 17-18 (N.D. Ohio Nov. 6, 2007); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* 2005 U.S. Dist. LEXIS 46189, at *14 (S.D. Fla. Mar. 17, 2005) ("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis.")

The proposed Settlement Class here meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation.

1.      **Numerosity**

The proposed class of 464 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.,* 2013 U.S. Dist. LEXIS 130591, at *4 (No. 8:13-cv-1204-T-33TBM, M.D. Fla. Sept. 12, 2013) (*citing Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)).

Because the Settlement Class sought is premised on a purportedly uniform policy and practice of DEFENDANT with respect to the FCRA violations alleged in the Complaint, the Court may make a "common sense assumption" that everyone who meets the class definition are putative class members. *Evans v U.S. Pipe & Foundry Co.*, 696 F. 2d 925, 930 (11th Cir. 1983).

Further, the nature and size of the individual claims also make joinder impracticable. Under the FCRA, if the Court determines that Defendant willfully failed to comply with the FCRA, as alleged in Named Plaintiff's Complaint, Defendant is liable for actual damages *or* statutory damages (ranging between $100 and $1,000), and attorneys' fees and costs. *See* 15 U.S.C. § 168ln.[1] As such, most of the members of the proposed class do not have claims which are sufficiently large for individuals to pursue on their own. Courts have found modest claims such as these are well suited for class action. *Reardon v. ClosetMaid Corp.*, 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) (FCRA class certification granted based on nearly identical

---

[1] Punitive damages are also available in certain instances but are not at issue here.

claims); *see also Alberts v. Nash Finch Co*., 245 F.R.D. 399 (D. Minn. 2007) (small size of individual claims considered in certifying class action for individuals in a WARN Act action).

Additionally, the judicial resources required for the potential 464 FCRA claims against Defendant to remedy the claims at issue in this lawsuit would be tremendous and wasteful.  For these reasons, Named Plaintiff has satisfied the numerosity requirement of Rule 23(a).  The Settlement Class of 464 here is thus sufficiently numerous.

### 2.   **Commonality**

The United States Supreme Court recently clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). Courts in this Circuit have applied *Dukes* to the commonality analysis, but caution that *Dukes* does not set an impossible standard for commonality.  "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike."  *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (*internal quotations and citation to Dukes*, 131 S. Ct. at 2556, *and others omitted*); *see also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (*citing Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In the instant case, the essence of Named Plaintiff's claims is that Defendant failed to provide sufficient notice to class members, pursuant to the requirements of the FCRA.  The potential common questions of fact could include: (1) whether Defendant's notice and authorization form satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); (2) whether Defendant's "release" and other extraneous language contained in the

background check authorization violates the FCRA; and, (3) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.  *See* 15 U.S.C. § 1681n and § 1681s; *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (granting final certification for the Settlement classes under the FCRA).

Over the years, numerous FCRA classes have been certified in cases in which common documents or forms have been provided to class members, or when a defendant's purportedly uniform policies and procedures impacted class members in the same way.  In such circumstances, courts have found a single common question of law or fact will suffice.  *See, e.g. Murray v. E*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investments, LLC,* 244 F.R.D. 502 (S.D. Ind. 2007) (same); *Kudlicki v. Capital One Auto Fin., Inc.,* 241 F.R.D. 603 (N.D. Ill. 2006) (same); *see also Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010) (finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful); *Campos v. ChoicePoint, Inc*., 237 F.R.D. 478, 485 (N.D. Ga. 2006) (finding commonality and certifying FCRA class when defendant consumer reporting agency consistently and as a matter of policy failed to provide full file disclosures to consumers who requested them); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) (finding commonality and certifying FCRA class when consumer reporting agency sent allegedly misleading form letter to consumers who disputed information on their reports); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) (same); *Gillespie v. Equifax Info. Servs., LLC*, 05 C 138, 2008 WL 4614327, *4 (N.D. Ill. Oct. 15, 2008) (finding commonality and certifying FCRA class when consumer

13

reporting agency's standard procedure allegedly caused inaccurate reporting); *Williams v. LexisNexis Risk Mgmt. Inc*., 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (finding commonality and certifying FCRA class when claim revolved around consumer reporting agency's procedures for notifying class members that adverse public record information about them was being reported).  Accordingly, the requirement of commonality has been met.

### 3.    <u>Typicality</u>

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

 "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).  Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008).  The typicality requirement "is said to limit class actions to those fairly encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theory underlying the claims of the putative class members are arguably identical to the Named Plaintiff's FCRA claims.  Here, all of the claims are potentially based on a substantially identical set of facts and are arguably grounded in the same legal theories; namely, that Defendant's disclosure and authorization form failed to satisfy the requirements under the FCRA.  The Class Representative's claims are potentially "typical" of the Class and,

14

consequently, the typicality requirement of Rule 23(a)(3) has been met.  *See* FED. R. CIV. P. 23(a)(3); *see also Reardon v. Closetmaid Corp*., No. 08 CV 1730 (MRH), 2013 WL 6231606, at *16 (W.D. Pa. Dec. 2, 2013) (finding typicality with regards to pre-adverse action notice).

### 4.    Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has arguably been met. The Named Plaintiff's interests are similar to those of the Settlement Class.   There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class members in prosecuting her claims and, in fact, participated actively in the FCRA Litigation by assisting Class Counsel in developing the facts necessary to file the Complaint and by appearing at mediation and supporting the claims of her fellow Settlement Class members.

With respect to Class Counsel, the proposed attorneys have extensive class and collective action experience, as detailed in the declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A., filed contemporaneously herewith. (Decl. of L. Cabassa, Ex. C; Decl. of B. Hill, Ex. D)  When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad

faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co*., 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Counsel experienced in plaintiffs' representation in class actions is generally considered adequate under Rule 23(a)(4) in this Circuit. *See Waters*, 2012 U.S. Dist. LEXIS 99129, at *28 (approving class counsel as adequate where "Plaintiffs' attorneys have demonstrated extensive experience as litigators in federal court class action litigation.").

## B. Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class arguably meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1. Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be

resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, arguably common questions of law and fact predominate. The central common issues in this case are whether Defendant's notice and authorization form satisfied the notice and authorization requirements under the FCRA and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate. *See Reardon v. Closetmaid Corp.*, 2013 WL 6231606, at *18 (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

### 2.   <u>Superiority</u>

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is arguably met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement

Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer,* 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011). Defendant's business is located within this District and it is the District where any claims to be resolved through this litigation arose. Any separate claims by the Settlement Class members would necessarily be heard here. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *See Smith*, 2007 U.S. Dist. LEXIS 85551, at *12-14 (finding superiority under Rule 23(b)(3)); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20-21 (same); *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). In such circumstances as exist

18

in this case, a class action is particularly appropriate for settlement purposes. Accordingly, concentrating all the potential litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the FCRA claims of the Named Plaintiff and Settlement Class members.

**C.      Rule 23(c)**

**1.      Contents of Notice**

The Parties submit that the proposed Notice and Official Notice Form (hereinafter "Class Notice"), a copy of which is attached to the Settlement Agreement (Ex. A) as Exhibits A and B, meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). That rule, in pertinent part, provides as follows:

Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Class Notice satisfies each of the foregoing requirements. The Class Notice summarizes the nature of the pending FCRA Litigation and the Settlement Agreement's essential terms and provides each Settlement Class member with an individualized, projected settlement payment exclusive of attorneys' costs and fees. The Class Notice further discusses the nature of the action, describes the Settlement Class definition, and informs Settlement Class members of the

Class claims and the Parties' contentions and defenses.  The Class Notice also states that a Settlement Class member may enter an appearance through counsel.  The right of the Settlement Class members to exclude themselves, and the time, manner, and process for doing so, is prominently detailed in the Class Notice.  The Class Notice also explains in clear terms that the Agreement, when approved, will be binding on all members of the Settlement Class who do not exclude themselves.  The Class Notice also apprises the Class, among other things, that complete information regarding the Settlement Agreement is available upon request from Class Counsel.  In addition, the Class Notice informs the Settlement Class of the request for the approval of Class Counsel's attorneys' fees.  *See* FED. R. CIV. P. 23(h).

> ### 2.    <u>Manner of Notice</u>

As to the manner of giving notice, Federal Rule of Civil Procedure 23(c)(2)B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort."  An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test.  *Eisen v. Carlisle & Jacquelin et al.,* 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

The Settlement Agreement provides that a Court-approved notice shall be mailed to the last known address of each Settlement Class member, as reflected in Defendant's records, or as instructed by the Settlement Class member through Class Counsel.  The mailing and the fairness hearing will be timed in compliance with CAFA so that the members of the Settlement Class will have not less than 60 days from the date of delivery of the mailing to object to the Settlement Agreement and to appear by counsel, with a final fairness hearing being held at the Court's

convenience within 90 days following entry of an Order on this Motion.  In the case of any returned envelopes, the Claims Administrator will forward these envelopes to such corrected addresses as the Claims Administrator may otherwise obtain based on a reasonable search.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.

### D.      The Settlement is Fair, Adequate, and Reasonable

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;   (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."  *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

As set forth above, the FCRA Litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant.  Because this case settled not long after filing, Named Plaintiff had yet to survive **two** motions to dismiss, class certification or summary judgment.  Each of these phases of litigation presented serious risks, which the

settlement allows Named Plaintiff and the Settlement Class to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain.  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23-24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

In the FCRA context, the gross *pro rata* Settlement Class member recovery of $70.00 in this settlement is in line with per class member settlement amounts in similar cases under the FCRA.[2]  The Settlement therefore is within the range of other FCRA class action cases.  The Settlement was reached after contentious litigation, as well as after an all day mediation that was

---

[2] See, e.g. *Simons v. Aegis Communications Group*, No. 2:14-cv-04012, Order Granting Preliminary Approval (W.D. Mo. Oct. 15, 2014) (ECF No. 29) (preliminarily approving improper disclosure settlement with payment of $35 per class member); *Townsend v. Sterling Jewelers Inc.*, No. 1:13-cv-3903, Plaintiff's Motion for Final Approval of Class Action Settlement (N.D. Ill. August 15, 2014) (ECF No. 54) (requesting approval of pre-adverse action class claim where class members who submitted a claim form would receive $50) and *Townsend*, Minute Entry Approving Settlement (N.D. Ill. Sept. 15, 2014) (ECF No. 58); *Marcum v. Dolgencorp, Inc.*, No. 12-cv-108, Memorandum in Support of Joint Motion For Preliminary Approval of Settlement, (E.D. Va. Oct. 15, 2014) (seeking approval for settlement of inadequate disclosure claim with payments to class members of $53) and *Marcum*, Order of Preliminary Approval of Class Action Settlement (E.D. Va. Oct. 16, 2014) (ECF No. 78) (approving settlement); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (ECF No. 39) (approving settlement providing for $54 gross amount per class member).

followed by a series of post-mediation settlement discussions.  Defendant's deadline to respond to Named Plaintiff's Motion for Class Certification was also looming as the Court Ordered litigation stay was about to expire.

On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed.  Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a significant portion of their possible FCRA claims from the Settlement Fund, even if the amount is slightly less than the minimum that could have been recovered through successful litigation.  Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff supports the Settlement.  Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

## IV.   <u>CONCLUSION</u>

***WHEREFORE***, the Parties respectfully request that the Court enter an order: (1) preliminarily approving the Agreement between Named Plaintiff, on her own behalf and on behalf of the Settlement Class of similarly situated applicants to, and current and former employees of Defendant; (2) preliminarily certifying the above-described Settlement Class for settlement purposes; (3) approving the form and manner of Notice to Class and the right to Object to the Agreement; (4) scheduling a Fairness Hearing for the Final Consideration and approval of the Agreement; and (5) finally approving the settlement in a subsequent Order.

4697825v.1

DATED this 11ᵗʰ day of August, 2017.

Respectfully submitted,

CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP100 North
Tampa Street, Suite 3350 Post
Office Box 1840
Tampa, Florida  33601-1840
Telephone: 813-223-7166
Facsimile: 813-223-2515

BY:   /s/*Angelique Groza Lyons*
  Angelique Groza Lyons
  Florida Bar Number: 118801
  E-mail: alyones@constangy.com
  Sean A. Douthard
  Florida Bar Number: 102589
  E-mail: awallrapp@constangy.com
  Counsel for Defendant

WENZEL FENTON CABASSA, P.A.
1110 North Florida Avenue
Suite 300
Tampa, Florida 33602
Telephone:  813-224-0431
Facsimile:  813-229-8712

BY:  /s/*Brandon J. Hill*
  Brandon J. Hill
  Florida Bar Number: 37061
  E-mail:  bhill@wfclaw.com
  Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

  **I HEREBY CERTIFY** that on August 11, 2017, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send a copy to:

Angelique Groza Lyons
Sean A. Douthard
Constangy, Brooks, Smith & Prophete, LLP
100 North Tampa Street, Suite 3350
Tampa, FL 33601
***Attorneys for Defendant***

     /s/ Brandon J. Hill    
     **BRANDON J. HILL**

24